**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MONIQUE P. HOWARD** | * | **Case No.: AW-04-2966** |
| **Plaintiff,** | * | |
| **v.** | * | |
| **KING'S CROSSING, INC., et. al.** | * | |
| **Defendants.** | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

This action involves a suit brought by Monique Howard ("Howard" or "Plaintiff") against King's Crossing, Inc. ("King's Crossing"), Rosepark LLC ("Rosepark"), Eric Fedewa ("Fedewa"), and Council of Unit Owners of King's Crossing Condominium, Inc. ("Council"), (together, "Defendants") for breach of warranty, fraud, negligence, violations of the Maryland Consumer Protection Act, and breach of fiduciary duty in connection with the sale of real property. Currently pending before the Court is King's Crossing, Rosepark, and Fedewa's ("Defendant Sellers") Motion to Dismiss, or in the Alternative to Stay Proceedings Pending Outcome of Arbitration [38] and Motion to Stay Discovery [54]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). For the reasons that follow, this Court with deny both of Defendant Sellers' motions.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2001, Howard contracted to purchase a condominium from King's Crossing, a Maryland corporation. The Condominium Sales Contract ("Contract") contained a number of form provisions including the purchase price, a requirement to make payments to Council for repairs and

maintenance of her unit and common areas, and also sets forth King's Crossings' agreement to sell the condominium and Howard's agreement to purchase the condominium.

The Contract also includes an arbitration agreement that establishes how disputes between Defendant Sellers and Howard would be resolved. The Contract, including the arbitration provision, was given to Howard on a take-it-or-leave-it basis. The arbitration agreement allows Defendant Sellers to litigate claims against Howard either through arbitration or in courts of competent jurisdiction, while Howard must litigate all of her claims against Defendant Sellers through arbitration. Through the agreement, the parties waived their rights to a jury trial and reduced the statute of limitations for any claims to one year. The arbitration agreement specified that any arbitration proceedings would be performed in accordance with the rules and procedures of the American Arbitration Association ("AAA"). AAA rules state that the initiating party must deposit with the arbitrator an administrative fee at the start of the arbitration, in this case $8,500.00, as well as pay the arbitrator his hourly rate. Finally, the agreement contains a fee-shifting clause that requires Howard to reimburse King's Crossing for any expenses King's Crossing incurs while trying to enforce this agreement, even if King's Crossing does not bring a suit. Meanwhile, Howard must pay all of her own attorney's fees and costs if she wishes to enforce the Contract. Howard moved into the condominium on or about May 25, 2001.

Almost immediately, Howard noticed serious structural and plumbing problems with the condominium. Howard repeatedly asked King's Crossing, Rosepark, Fedewa, and Council to make repairs to her unit. After each report of a problem, Defendants assured Howard that the problems with her unit would be resolved. Based on these promises, Howard alleges that she refrained from initiating any legal action against Defendants. The problems with Howard's condominium were

never adequately resolved and, on May 21, 2003, a Prince George's County Housing inspector condemned the condominium as uninhabitable.

Howard initially filed this lawsuit in the Circuit Court for Prince George's County, Maryland, in July 2004, against Defendant Sellers seeking to reform the Contract, and claiming that the Contract is unconscionable. She also sought damages from King's Crossing and Rosepark for breach of warranty, violating the Maryland Consumer Protection Act, and for negligent repairs to her condominium. In addition, Howard sought damages from Fedewa for fraudulent misrepresentations of material facts.

On September 15, 2004, after Howard moved to the District of Columbia, Defendants removed the action to United States District Court for the District of Maryland. In May 2005, Howard amended her Complaint, with the consent of Defendants, to add Council as a necessary party. Howard added a claim against Council for breach of fiduciary duty for improperly allocating funds needed to repair her unit.

On April 14, 2006, Defendant Sellers moved to enforce the arbitration agreement against all parties by filing a Motion to Dismiss, or in the Alternative to Stay Proceedings Pending Outcome of Arbitration. Council responded by requesting that the Court deny Defendant Sellers' motion with respect to Howard's claims against Council because Council is not a party to the arbitration agreement. The motions are ripe for review and the Court will now issue an Opinion.

## DISCUSSION

The essential issue before the Court is whether the arbitration clause in the sales contract is invalid for lack of consideration, or in the alternative, because it is unconscionable. Neither party disputes the applicability of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14 (2000). Section

2 of the Act, which pertains to the validity, irrevocability, and enforcement of agreements to arbitrate, provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000). Section 2 demonstrates Congress's intent for courts to enforce private agreements to arbitrate. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985).

Where the FAA applies, the district court must determine whether there is a valid agreement to arbitrate, bearing in mind the "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA requires a "healthy regard for the federal policy favoring arbitration" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25. However, Congress did not intend for the FAA to force into arbitration parties who did not agree to arbitrate their disputes. See Sydnor v. Conseco Financial Serving Corp., 252 F.3d 302, 305 (4th Cir. 2001). Courts generally should apply ordinary state-law principles governing the formation of contracts to determine if the parties created a valid arbitration agreement. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Accordingly, because the Contract was created in Maryland, the Court will use the general contract principles of Maryland to decide the enforceability of the arbitration agreement.

I.     Consideration for the Arbitration Agreement

4

Plaintiff argues that the arbitration agreement is unenforceable because it lacks consideration from both parties. Pl. Mem. 8. An arbitration agreement is a severable contract, which is enforceable independently from the contract as a whole. See Holmes v. Coverall N. Am., Inc., 649 A.2d 365, 370 (Md. 1994). Arbitration agreements ordinarily require consideration to be binding and enforceable. See Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656, 661 (Md. 2003).

Consideration is demonstrated by a benefit given to the promisor or the promisee incurring some detriment. See id. A promise may become the consideration for another promise only when it constitutes a binding obligation. See id. An illusory promise, on the other hand, appears to be a promise, but does not actually bind or obligate the promisor to anything. See id. at 662. An illusory promise, by its terms, makes performance entirely optional for the promisor and does not constitute a promise. See Cheek, 835 A.2d at 662; see also Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315 (6th Cir. 2000); Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753, 759 (7th Cir. 2001); Dumais v. Am. Golf Corp., 299 F.3d 1216, 1219 (10th Cir. 2002) (noting that other circuits have held that illusory promises are not binding obligations).

An arbitration agreement will not be enforced unless it is mutually binding on all parties to the agreement. See Cheek, 835 A.2d at 665; Nowak v. NAHB Research Ctr., Inc., 848 A.2d 705, 711 (Md. Ct. Spec. App. 2004). Although Defendant Sellers do not specifically state that they reserve the right to alter, amend, or revoke, the arbitration agreement, the fact that they can choose to resolve disputes through arbitration or in the courts makes their promise to arbitrate illusory and does not constitute a binding obligation to arbitrate. Specifically, the Contract states that King's Crossing may seek specific performance of any part of the Contract, sue for damages, or arbitrate any claim against Plaintiff. Pl.'s Ex. 1 ¶ 13(a). Meanwhile, Plaintiff waives any right to seek specific

5

performance of the agreement or sue for damages. Pl.'s Ex. 1 ¶ 13(b). Instead, Plaintiff's sole

remedy under the agreement is final and binding arbitration. Pl.'s Ex. 1 at 6. While parties may

reserve the right to litigate specific claims in a judicial forum rather than through arbitration, each

party must still be bound to arbitrate a set of claims. Compare Walther v. Sovereign Bank, 872 A.2d

735, 748 (Md. 2004) (holding that parties may reserve limited exceptions to an arbitration

agreement) with Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656, 665 (Md. 2003)

(holding that the promise to arbitrate claims must be mutually binding). Here, Defendant Sellers are

not required to arbitrate any potential claim against Plaintiff. Therefore, the arbitration agreement

lacks mutual consideration and is unenforceable.

## II.   Unconscionability

Alternatively, Plaintiff claims that the arbitration provision is unenforceable because it is

unconscionable. Pl.'s Mem. 9. For a contract to be revoked because it is unconscionable, a court

must find a contract is both procedurally and substantively unconscionable. See Doctor's Ass'n, Inc.

v. Casarotto, 517 U.S. 681, 687 (1996). A contract is procedurally unconscionable if there were

deficiencies in the contract formation process. See Walther v. Sovereign Bank, 872 A.2d 735, 744

(Md. 2004). A contract is substantively unconscionable if its terms are overreaching and oppressive.

See id.

### A.   Procedural Unconscionability

Plaintiff argues that the arbitration agreement is procedurally unconscionable because she

claims she was never told that she was signing a contract, the terms were deceptively inconspicuous,

and the agreement was a contract of adhesion. Pl.'s Mem. 11-12. The law presumes that an

individual knows and understands the contents of a document that he signs and not reading a

contract is not normally a basis for courts to revoke a contract. See Walther v. Sovereign Bank, 872 A.2d 735, 745 (Md. 2004); Smith v. Humphreys, 65 A. 57, 59 (Md. 1906).

Plaintiff's claims that the terms were deceptively inconspicuous are inconclusive because there are no specific requirements for how an arbitration clause is to be presented in a contract. Generally, arbitration agreements are enforced if they are made conspicuous by underlining the text, increasing the size of the font, placing the clause directly above a signature line, boxing in the clause, using different colors, capitalizing or bolding the letters, or creating a separate title for the section with the arbitration clause. See Walther v. Sovereign Bank, 872 A.2d 735, 745 (Md. 2004); Hubbert v. Dell Corp., 835 N.E.2d 113, 124 (Ill. App. Ct. 2005); Terminix Intern., Inc. v. Rice, 904 So. 2d 1051, 1056 (Miss. 2004) (describing different ways to make an arbitration agreement conspicuous). In this case, while the arbitration agreement is not as conspicuous as it could be, Plaintiff was required to initial each page (including the page with the arbitration agreement) and the same type font is used throughout the contract, so the agreement is not inconspicuous enough to be unconscionable. See Rice, 904 So. at 1056 (holding an arbitration agreement was not made inconspicuous because it was written in the same type font as the rest of the agreement).

Finally, a contract of adhesion is not per se procedurally unconscionable, but may be unconscionable based on the substance of its terms. Walther v. Sovereign Bank, 872 A.2d 735, 746 (Md. 2004). For a contract to be found procedurally unconscionable because it is a contract of adhesion, the substance of the contract must be so one-sided that it oppresses or creates an egregious imbalance in the obligations and rights imposed by the arbitration agreement on the non-drafting party. Id. at 746-47. Therefore, the inquiry into whether a contract with adhesive characteristics is unconscionable merges the procedural and substantive unconscionability inquiries.

B. <u>Substantive Unconscionability</u>

Plaintiff claims that the arbitration clause is substantively unconscionable because the clause shortens the statute of limitations, waives Plaintiff's right to a jury trial, lacks mutuality, requires Plaintiff to spend large amounts on arbitration costs, and unreasonably shifts attorney's fees to Plaintiff. Pl.'s Mem. 13-15. An agreement is not necessarily unconscionable because parties contract away certain fundamental rights. <u>Walther v. Sovereign Bank</u>, 872 A.2d 735, 753 (Md. 2005). Parties may through contract change the statute of limitations for claims arising under the agreement or their rights to litigate their claims in front of a jury. <u>See</u> <u>Coll. of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.</u>, 752 A.2d 265, 271 (Md. Ct. Spec. App. 2000) (stating parties can contractually modify a limitations period); <u>Walther v. Sovereign Bank</u>, 872 A.2d 735, 753 (Md. 2004) (holding that parties can contract away their right to a jury trial).

An agreement, however, may be deemed substantively unconscionable because it lacks mutuality. Although mutuality does not require an exactly even exchange of identical rights and obligations between parties, the promise to arbitrate must be mutually binding and the exchange of rights and obligations must not be "so unfairly oppressive as to make the agreement unconscionable." <u>Compare</u> <u>Walther v. Sovereign Bank</u>, 872 A.2d 735, 748 (Md. 2004) (holding that parties may reserve limited exceptions to an arbitration agreement), <u>with</u> <u>Cheek v. United Healthcare of Mid-Atlantic, Inc.</u>, 835 A.2d 656, 665 (Md. 2003) (holding that the promise to arbitrate claims must be mutually binding). The Court has already decided that the arbitration clause does not create a mutually binding obligation because Defendant Sellers are free to choose between pursuing their claims against Plaintiff in a judicial forum or through arbitration. Furthermore, in the event of a default, the fee-shifting provision lacks mutuality because the Plaintiff is required to reimburse

Defendant Sellers for all of their attorneys fees and costs, regardless of whether they bring a suit or not, to enforce the Contract, while the Defendant Sellers are under no obligation to reimburse Plaintiff for attorneys fees and costs if Plaintiff wishes to enforce the Contract. Pl.'s Ex. 1 ¶¶ 13(a)-13(b). As such, the Contract is substantively unconscionable because the Contract imposes rights and obligations that are unfair and oppressive to the Plaintiff.

In addition, an arbitration agreement may be unconscionable because it requires a party to spend large sums on arbitration costs. See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000). A party claiming that an arbitration agreement is unconscionable because it imposes large arbitration costs must show the likelihood of incurring such costs. Id. at 92. In this case, Plaintiff would be required to spend $8,500.00 in administrative fees and at least $200.00 per hour in arbitrator's fees. Pl.'s Ex. 3 at 3; Pl. Mem. at 7-8. While there is indication that Plaintiff has a gross monthly salary of $1800.00 and no cash savings, the Court is not prepared, without further development of the record, to conclude that requiring arbitration under these circumstances renders this contract substantively unconscionable. Pl. Mem. at 8. See Green Tree Financial Corp.-Alabama, 531 U.S. at 90 (holding that the record must show the cost of arbitration will cause a hardship for an arbitration agreement to be unconscionable).

In sum, this Court holds that the Contract's arbitration agreement is unenforceable because of a lack of consideration and because the Contract is both procedurally and substantively unconscionable.

III.    Council cannot be compelled to arbitrate its dispute with Howard.

Defendant Sellers appear to argue that Plaintiff's Complaint should be dismissed and all Defendants, including Council, should be compelled to arbitrate Plaintiff's pending claims. Def.'s

Sellers Mem. 4. Council opposes Defendant Sellers' motion to compel arbitration for any claims Plaintiff may raise against Council. Council Opp'n 2. Because the arbitration agreement is unenforceable, this Court will not compel any party to arbitrate any dispute arising out of this contract. Furthermore, even if the arbitration agreement were valid, this Court could not require Council to submit to arbitration because Council was not a party to the arbitration agreement. See Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998).

## CONCLUSION

For the reasons stated above, the Court will DENY Defendant Sellers' Motion to Dismiss, or in the Alternative to Stay Proceedings Pending Outcome of Arbitration [38]. An Order consistent with this Opinion will follow.


Date:   August 7, 2006                          _____/s/_____
                                                Alexander Williams, Jr.
                                                United States District Court